**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAUL GONZALES DAVILA, | : | 23 Civ. 512 (SRU) |
| Plaintiff, | : | |
| | : | |
| vs. | : | **ECF CASE** |
| | : | |
| ROBLEN, LLC f/d/b/a VICOLO PIZZA | : | |
| RESTAURANT and VIKTOR BERISHA, | : | APRIL 17, 2025 |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

Defendants Roblen, LLC ("Roblen") and Viktor Berisha ("Berisha") (collectively, "the

Defendants") submit this Memorandum of Law in Support of their Motion for Summary

Judgment.  The Defendants move for summary judgment dismissing the eleven-count Complaint

(Doc. 1) brought against them by Plaintiff Raul Gonzales Davila ("Plaintiff").

**I.      PRELIMINARY STATEMENT**

This is a case that does not belong in federal court.  Federal jurisdiction for the case is

predicated on three claims arising under the Fair Labor Standards Act ("FLSA"): one is for

alleged failure to pay Plaintiff minimum wage; another for alleged failure to pay Plaintiff

overtime compensation; and the third for failure to keep wage and work-hour records and post

notices regarding minimum wage.  *See* Complaint, First, Second and Fifth Causes of Action.  As

the discussion below will make clear, over the course of discovery, which was protracted and

involved the production of voluminous business and personal financial records of the

Defendants, the Plaintiff has failed to elicit evidence that the Restaurant grossed at least

$500,000 in annual sales during the relevant period.  Therefore, Plaintiff cannot show that

Defendants are the kind of employers covered by the FLSA.  In addition, Plaintiff was unable to

1

elicit evidence that he had any sort of routine contact with out-of-state customers and/or routinely traveled across state lines in the course of his job duties as a pizza-delivery person. Therefore, this Court should grant summary judgment in favor of the Defendants with respect to the three FLSA claims. An additional reason for granting summary judgment with respect to the Fifth Cause of Action is the fact that the FLSA does not provide a private cause of action for an employer's failure either to keep wage and hour records or post notices about minimum wage.

With respect to the remaining state claims, they should be dismissed, especially the claims where there is not a common nucleus of operative facts with respect to the Connecticut wage claims: specifically, the discrimination claim (Ninth Cause of Action) and the tort claims (Tenth and Eleventh Causes of Action). Also, there are some state claims, the Sixth and Eighth Causes of Action in particular, where there does not appear to be a private cause of action contemplated by the statute upon which they are based or established law and the facts render them amenable to dismissal as a matter of law, such as the Seventh Cause of Action.

In light of the foregoing and the discussion to follow, the Court should grant Defendants' motion for summary judgment in its entirety with the result that all Causes of Action are dismissed with prejudice, except the Third, Fourth & Tenth, each of which is more appropriately litigated in a state forum.

## II.   FACTUAL BACKGROUND

During the COVID pandemic, Plaintiff worked at the pizzeria, Vicolo Pizza Restaurant ("the Restaurant"), located in New Canaan, Connecticut, which was owned by Roblen, LLC and managed by one its members, Berisha. *See* Complaint, ¶¶ 8, 9, 18 & 27. He alleges that he worked six days per week and fourteen-hour days for a total of 100 hours of work per week as a

driver, food preparer, runner and busboy.[1]  *See id.*, ¶ 27.  Plaintiff further alleges that he was paid

$500 per week in cash and had to turn over any tips he received to the Restaurant.  *See*

Complaint, ¶¶ 28 & 31.  Defendants challenge Plaintiff's contention of the number of hours that

he worked but not the amount that he was paid per week.  *See* Deposition of Viktor Berisha

dated August 12, 2024 ("Berisha Dep I") attached as Exhibit B at 84.  During the relevant time

period of this case, which is no further back than three years before April 24, 2023, the date that

the instant Complaint was filed, until the Restaurant closed on April 15, 2022, the Restaurant had

curtailed hours due to COVID.  *See* Ex. B (Berisha Dep I) at 82 & 84; Declaration of Viktor

Berisha dated April 15, 2025 ("Berisha Decl") attached as Exhibit C, ¶ 14.  The Restaurant

would open at noon and close at 8 p.m. or 8:30 p.m. at the latest and would have even more

reduced hours on Sundays.  *See* Ex B (Berisha Dep I) at 82; Deposition of Leonora Berisha dated

September 27, 2024 ("Leonora Berisha Dep") attached as Exhibit D at 21; Ex. C (Berisha Decl),

¶ 14.  Defendants further state that Plaintiff's actual work hours were noon to 2 p.m. and then

again from 5 p.m. to 8 or 9 p.m. six days per week for a total of 36 hours per week at most.  *See*

Ex. B (Berisha Dep I) at 82.  From 2 p.m. until 5 p.m., Plaintiff was permitted to leave the

Restaurant and use his free time as he wished.  *See* Deposition of Viktor Berisha dated

September 16, 2024 ("Berisha Dep II") attached as Exhibit E at 99.  Frequently, he would stay at

the Restaurant between 2 and 5 p.m. to nap.  *Id.*  Plaintiff denies this account of his work hours.

Plaintiff also alleges that Berisha committed a battery against him: according to the

Complaint, Berisha slapped his hand "[o]n multiple occasions" when Plaintiff attempted to grab

a tip.  *See* Complaint, ¶ 41.  Upon questioning at his deposition, Plaintiff clarified that Berisha

---

[1] The Complaint alleges that Plaintiff worked 100 hours per workweek but the arithmetic of 6 days of 14-hour shifts adds up to 84 hours per week not 100.  *See* Complaint, ¶ 27.  During his deposition, Plaintiff alleged that he actually worked seven days per week.  *See* Deposition Transcript of Plaintiff dated November 28, 2023 ("Plaintiff Dep I") attached as Exhibit A at 62-64.

slapped his hand once when grabbing at a tip and the incident occurred about one-and-a-half years before the restaurant closed or approximately in October of 2020. *See* Ex A (Plaintiff Dep I) at 90-94.

Plaintiff also alleges that Berisha engaged in acts that amounted to intentional infliction of emotional distress. *See* Complaint, ¶¶ 119-22. Upon being questioned as to what actions of Berisha constituted the humiliation and castigation that he viewed as intentional infliction of emotional distress, Plaintiff identified the following: 1) Berisha allegedly paid less compensation than he promised and also increased his duties without increasing his pay (Ex A (Plaintiff Dep I) at 94-96); 2) Berisha allegedly threatened to lessen Plaintiff's pay if he continued to complain about his pay rate (*id.* at 95); 3) when Plaintiff had a car accident while delivering food for the restaurant, Berisha allegedly did not run to the scene of the accident and assist him (*id.* at 97); 4) Berisha allegedly once made Plaintiff pay for a whole box of masks during the COVID outbreak when Plaintiff forgot to bring his own (*id.* at 96); 5) Berisha allegedly threatened to fire him and have him deported a few times (Deposition of Raul Gonzales Davila dated December 5, 2023 ("Plaintiff Dep II") attached as Exhibit F at 219; and 6) Berisha made the Plaintiff, along with others, including his son, Robert, who also worked at the Restaurant, assist him in lifting a 50-quart container of dough onto a trolley so it could be moved from one side of the kitchen to the other thereby (Ex. F (Plaintiff Dep II) at 221-22); Ex. C, ¶ 12.

Due to the fact that the Restaurant was a family business and all but one employee, the Plaintiff, were family members, the Restaurant did not track employee hours. *See* Ex. B (Berisha Dep I) at 79. Further, the Restaurant posted neither federal nor state department of labor posters notifying employees of the minimum wage or other relevant wage and hour rules and

4

regulations.  *See* Ex. B (Berisha Dep I) at 77-78; *see also* Ex. E (Berisha Dep II) at 120-21 & 126-28.

On April 8, 2022, a week after he was terminated by Defendants, Plaintiff filed a wage claim against the Defendants.  *See* Email from Ivanoba Mota, CT Department of Labor investigator to Stephanie Stich, Esq. dated Sept. 22, 2023 attached as Exhibit G.  In a confirmation of receipt of his claim on June 27, 2022, Investigator Ivanoba Mota informed Plaintiff that he had the right to pursue his wage claim independently in court with the assistance of an attorney.  *See* Letter from Ivanoba Mota, CT Department of Labor investigator to Raul Gonzales dated June 27, 2022 attached as Exhibit H.  In a document that Plaintiff submitted to the Connecticut Department of Labor in conjunction with his wage claim, he indicated that he was aware of his wage claim from the beginning of his employment at the Restaurant.  *See* Undated letter from Plaintiff to the Department of Labor attached as Exhibit I.  While Plaintiff filed a complaint with the Department of Labor as to his wage and hour claims against the Restaurant immediately after he was terminated by Defendants, he did not file the claims before this Court until more than a year later on April 24, 2023.  *See* Complaint.

Plaintiff alleges that he was discriminated against with respect to his pay because of his race, ethnicity and/or national origin.  *See* Complaint, ¶¶ 111-14.  Notably, during the relevant period for his discrimination claim, from approximately October 2021 (which is 300 days before filing a complaint with the Commission on Human Rights and Opportunities) until the Restaurant's closing on April 15, 2022, there were only five workers at the Restaurant, according to each party.  According to the Defendants, the workers were Viktor Berisha, Robert Berisha, Leonora Berisha, Djuste Berisha and Plaintiff.  *See* Ex. C (Berisha Decl), ¶ 13.  According to the Plaintiff, the workers were Viktor Berisha, Robert Berisha, Leonora Berisha, Milton Cojom (the

latter of whom the Defendants deny was ever an employee but Plaintiff insists he was) and himself.   *See* Ex. A (Plaintiff Dep. I) at 26; *but see* Defendants' Response to Interrogatory No. 6 attached as Exhibit J; Ex. D (Leonora Berisha Dep) at 26 (denying knowledge of Milton Cojom); Ex. C (Berisha Decl), ¶ 13.  During his deposition, Plaintiff admitted that none of these other co-workers had similar duties to his own.  According to Plaintiff, his duties were different from each of these other co-workers.  *See* Ex. A (Plaintiff Dep. I) at 85-86.

During the time period relevant for Plaintiff's claims, from April 24, 2020 to the Restaurant's closing on April 15, 2022, assuming Plaintiff prevails at trial in showing the Defendants violated the FLSA "willfully," the Restaurant's gross sales were at most $284,579.  *See* redacted excerpts from Roblen, LLC's 2020-22 income tax returns attached as Exhibit K.  In addition, the only bank account that the Restaurant used had annual deposits that never exceeded $293,694.43 in the years 2020, 2021 and 2022.  *See* redacted excerpts of monthly bank statements attached as Exhibit L.

As for Plaintiff's job duties and their relation to interstate commerce, Defendants definitively state and swear that the point-of-sale system that they used for the Restaurant would not accept delivery orders that were outside the zip code of New Canaan.  *See* Ex. E (Berisha Dep II) at 39-41; Ex. C (Berisha Decl), ¶ 8.  Therefore, as a delivery person, Plaintiff was permitted to deliver food only to those destinations within the town of New Canaan.  If he ever delivered food to anyone in New York, then he was doing something that was not authorized by the Restaurant's owner.

### III.    LAW AND ARGUMENT

#### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotation marks omitted).

"In order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that set[s] forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles."  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (internal quotation marks omitted). The non-moving party "does not show the existence of a genuine issue of material fact by making assertions that are conclusory … or based on speculation …."  *Id.* (citations omitted) (*citing Kulak v. City of New York*, F.3d 63, 71 (2d Cir. 1996)) ("conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"). "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Perkins v. Bronx Lebanon Hosp. Ctr.*, 715 F. App'x 103, 104 (2d Cir. 2018) (*quoting Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

#### B.    Plaintiff is not a Covered Employee Under the Fair Labor Standards Act

Plaintiff is not a covered employee under the FLSA and, therefore, Defendants should be granted summary judgment with respect to all of his FLSA claims (namely, the First, Second and

Fifth Causes of Action each of which is pursuant to the FLSA). *See* Complaint, ¶¶ 52-59, 61-64, 89-91.

It is well established that coverage under the FLSA is an element of a plaintiff's claim under the FLSA. *See Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 305 (2014). In addition, the plaintiff bears the burden of showing that he or she is a covered employee under the statute. *See id.* A plaintiff can show employee coverage under two theories: 1) enterprise coverage; or 2) individual coverage. *See id.* at 305-09.

A requirement of enterprise coverage is the demonstration by the plaintiff that the employer had at least $500,000 in gross annual sales during the relevant period. *See id.* at 305 (quoting 29 U.S.C. § 203(s)(1)(A)). One of the requirements of individual coverage is the demonstration by the plaintiff that he or she performs work related to the movement of persons or things across state lines. *See id.* at 308. "As a basic rule, 'if [the plaintiff] did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA.'" *See id.* (*quoting Li v. Cheng*, 2012 WL 1004852, at *4 (E.D.NY. March 23, 2012)).

With respect to enterprise coverage, Plaintiff here needs to show that the Restaurant had gross annual proceeds of at least $500,000 in the years 2020, 2021 and 2022. Federal tax returns for the entity that reported all of the annual sale proceeds from the Restaurant, Roblen, LLC, indicate that those proceeds never approached $500,000 per year. *See* Ex. K. The highest annual sales amount reported during those three years was $284,579, which occurred in 2020. *See id.* In addition to producing entity tax returns to the plaintiff, Roblen, LLC also produced monthly statements for the only bank account that the Restaurant used to deposit proceeds during the relevant period; those statements demonstrate that annual deposits never approached $500,000. *See* Ex. L. The largest amount of deposits occurred in 2021, which was $293,694.43 and thus

well short of the $500,000 threshold for FLSA coverage. *See id.* In light of the fact that the Restaurant's annual sales were at least $200,000 short of the threshold for finding enterprise coverage under the FLSA, Plaintiff cannot predicate his FLSA claims on the theory of enterprise coverage.

With respect to individual coverage, Plaintiff must show that he had routine contact with out-of-state customers and/or routine travel across state lines. Notably, Plaintiff did not allege individual coverage in the Complaint. Arguably, he should be precluded from arguing FLSA coverage under this theory since he did not allege it. In any event, he cannot succeed pursuant to this theory. As Viktor Berisha testified at his deposition, he installed a point-of-sale system that would not allow any deliveries to destinations outside of New Canaan, Connecticut. *See* Ex. E (Berisha Dep II) at 39-41; Ex. C (Berisha Decl), at ¶ 8. To the extent that Plaintiff may attempt to argue that he delivered pizzas routinely to New York customers, he was doing so without the authorization of the owner, Berisha. To the extent that Plaintiff may try to argue that he is individually covered because of limited interactions that he might have had with dine-in customers – and Defendants note that they had limited dine-in customers during the first year of COVID and then none after a year up until the Restaurant's closing (Ex. B (Berisha Dep I) at 93-94; Ex. D (Lenora Berisha Dep) at 21-22; Ex. C (Berisha Decl), ¶ 6 – his efforts would fail since courts have denied that servers' interactions with dine-in customers can be a basis for individual coverage. *See Li v. Cheng*, 2012 WL 1004852, at *5.

Since Plaintiff cannot show employee coverage under the FLSA pursuant to either the enterprise or individual coverage theories, Defendants should be granted summary judgment with respect to the FLSA claims.

**C.    The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Claims**

The majority of Plaintiff's claims, eight of eleven, are Connecticut State claims.  This Court should not exercise supplemental jurisdiction over the rest of Plaintiff's eight state claims.  In federal cases where federal claims are dismissed pursuant to summary judgment and only state claims remain and those remaining claims will predominate subsequent proceedings in terms of proof, scope of the issues and the remedies sought, federal courts routinely dismiss the state claims without prejudice.  *See Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases); *see also Li v. Cheng*, 2012 WL 1004852, at *6.  That is particularly the case where, as here, plaintiffs advance novel questions under state law, *see Robison v. Via*, 821 F.2d 913, 925 (2d Cir. 1987), such as theories of recovery where there appears not to be a private cause of action – for example, Plaintiff's state claims arising from Defendants' failure to keep certain records and provide a meal break (*see* discussion below).  Notably, Connecticut's higher courts have yet to declare definitively that there are no private causes of action under Connecticut law where an employer fails to keep records of employee hours, fails to provide notices of relevant wage and hour laws, and fails to provide meal breaks to employees.

In addition, with respect to the State tort and discrimination claims, i.e., the Ninth through Eleventh Causes of Action, the Court does not have supplemental jurisdiction over these claims for they do not share a "common nucleus of operative fact."  In order to have supplemental jurisdiction over non-federal claims they must be related to the federal claims such that they would be expected to be tried in one proceeding.  *Thomas v. EONY LLC*, 2015 WL 1809085, at *4 (S.D.N.Y. April 21, 2015).  It is well established that the sole fact of the employment relationship between plaintiff and the defendant is insufficient to justify bringing tort and discrimination claims alongside wage and hour claims.  *See Morales v. Mw Bronx, Inc.*,

2016 WL 4084159, at *12-13 (S.D.N.Y. Aug. 1, 2016) ("Moreover, several courts addressing similar situations have held that the employment relationship itself is insufficient to create a 'common nucleus of operative fact' between the FLSA claim and a state-law, non-wage claim"); *Thomas v. EONY LLC*, 2015 WL 1809085, at *5-8 (S.D.N.Y. April 21, 2015).  With respect to the wage and hour claims, proof would be limited to the number of hours that Plaintiff worked since it is undisputed how much he was paid per week.  With respect to the state discrimination claim, i.e., Ninth Cause of Action, the number of hours that the Plaintiff worked would be almost irrelevant with respect to liability; rather, parties would be focused on adducing proof as to the Plaintiff's job duties as compared with other co-workers for the purpose of litigating the availability of a comparator to judge whether there has been discrimination.  *See* discussion, *infra*, III.E.  In addition, there would be litigation of the amount of compensation that all co-workers received to thoroughly present the comparator analysis.  Finally, a state discrimination claim also provides emotional distress damages to a prevailing plaintiff.  *See*, *e.g.*, *Oral Care Dental Group II, LLC v. Pallet*, 213 Conn. App. 389, 397, 277 A.3d 860, 866 (2022).  Litigation of the discrimination claim would entail evidence regarding emotional distress, which is not a component of damages in a wage and hour claim under either federal or Connecticut law.  As can be seen, a discrimination claim would be accompanied by multiple issues separate and distinct from the hours that Plaintiff worked at the Restaurant, which is the singular focus of Plaintiff's wage claims, and, therefore, there is minimal overlapping between the two kinds of claims.

As for Plaintiff's tort claims, the taking of evidence with respect to them would expand dramatically beyond the wage claims: all of the elements of each tort claim, namely, battery and intentional infliction of emotional distress, are separate and distinct from Plaintiff's minimum

11

wage and overtime claims.[2]  Therefore, there is no overlap at all between the elements of the tort claims and those of Plaintiff's wage claims.  In addition, with respect to the tort claims, as with the discrimination claim, there would necessarily be evidence regarding Plaintiff's alleged emotional distress, a component of damages, which, as stated above, is unavailable for the kind of wage claims pursued by Plaintiff here.  *See Prescott v. Gilshteyn*, 227 Conn. App. 553, 562-63, 322 A.3d 1060, 1069 (2024) (awarding a prejudgment remedy for contemplated emotional distress damages arising from battery and intentional infliction of emotional distress, among other tort claims).  Thus, there is little to no overlap between Plaintiff's tort claims and his wage claims.

In light of the foregoing, this Court should find that Plaintiff's discrimination and tort claims involve different rights, different interests, and different underlying facts than his wage-related claims.  Therefore, supplemental jurisdiction is lacking over the discrimination and tort claims of the Plaintiff.  In addition, given that some of Plaintiff's state claims involve novel theories, to wit, imputing a private cause of action where the statute is silent as to such, the Court should not exercise its discretion in finding supplemental jurisdiction.  *See Robison*, 821 F.2d at 925.  The state claims should be dismissed without prejudice, subject to the discussion below where Defendants seek the dismissal of certain Causes of Action as a matter of law (and, therefore, with prejudice).

---

[2] "In order for the plaintiff to prevail in a case for liability under … [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337 (1986).

The tort of battery has two elements under Connecticut law: (1) the defendant must have intended to cause a harmful or offensive contact … or an imminent apprehension of such contact with another person, and (2) a harmful contact with the other person results either directly or indirectly.  *See Simms v. Chaisson*, 227 Conn. 319, 331, 890 A.2d 548, 555 (2006).

**D.      The Fifth, Sixth, Seventh and Eighth Causes of Action Fail
To State A Claim As A Matter of Law**

In his Complaint, Plaintiff alleges as his Fifth and Sixth Causes of Action "Violations of the Recordkeeping & Noticing Regulations of the FLSA" and "Violations of the Recordkeeping & Noticing Regulations of the CMWA" respectively.  As the basis for these causes of action, Plaintiff references 29 C.F.R. Part 516 for the Fifth Cause of Action; and C.G.S. §§ 31-13(a), 31-66 & 31-71(f) for the Sixth Cause of Action.  *See* Complaint, ¶¶ 89-90, 93-96.

Of the federal district courts in Connecticut that have addressed whether plaintiffs have a private cause of action against an employer who fails to keep employee records or provide notice of relevant wage and hour law pursuant to federal and Connecticut law via posters or otherwise, the answer is no.  *See Pau v. Chen*, 2015 WL 6386508 at * (D. Conn. Oct. 21, 2015); *Bi v. Xia*, 2023 WL 4684828, at * (D. Conn. July 21, 2023) (J. Meyer) (quoting from *Pau* as follows: "'[N]either federal nor state law provides a private right of action to plaintiffs to enforce the record-keeping and notice-posting requirements in a civil action'").  Notably, in *Bi v. Xia*, the plaintiff there cited the exact same Connecticut statutes cited by Plaintiff here and the court held that the statutes do not give rise to a private cause of action.  Therefore, this Court should grant summary judgment in favor of the Defendants with respect to the Fifth and Sixth Causes of Action.

To the extent that Plaintiff alleges that he was solely a delivery driver during the relevant period, he was not an employee for which the Restaurant could use the tip credit provision in order to pay him less than minimum wage.  In *Amaral Brothers, Inc. v. Department of Labor*, 325 Conn. 72, 96 (2017), the Connecticut Supreme Court held that employers may not pay delivery drivers less than minimum wage and make up the differential with the tips that they received pursuant to Connecticut wage law.  *See id.*  Therefore, in light of *Amaral Brothers, Inc.*

13

and assuming that Plaintiff alleges that he was solely a delivery driver or held positions where he did not receive tips during the relevant period, the Seventh Cause of Action is not relevant and therefore should be dismissed as a matter of law.

Finally, with respect to the Eighth Cause of Action, which Plaintiff styles, "Violation of the Meal Break Provision of CMWA," no courts to date have opined as to whether C.G.S. § 31-51ii gives rise to a private cause of action.  Because the statute itself authorizes "civil penalties" but does not explicitly create a private cause of action, it can be safely assumed that there is no private cause of action under § 31-51ii.  *See Provencher v. Town of Enfield*, 284 Conn. 772 (2007) (Supreme Court noting the stringency of the test to read an implied private cause of action where the statute is silent on the issue since "it is a rare occasion that we will be persuaded that the legislature intended to create something as significant as a private right of action but chose not to express such an intent in the statute").  It is a regulation that expressly contemplates enforcement through "civil penalties," which are typically in the purview of the Connecticut Department of Labor alone.[3]

### E. Summary Judgment Should be Granted on the Ninth Cause of Action Because Plaintiff Cannot Identify A Comparator That Supports The Claim of Wage Discrimination

In the Complaint, Plaintiff alleges the Ninth Cause of Action, which is styled, "Workplace Discrimination in Violation of CMWA."  Complaint at p. 14.  While "CMWA" appears to refer to the Connecticut Minimum Wage Act, the statutory reference within the paragraphs alleging the claim refer to the Connecticut Fair Employment Practices Act.  Thus, it

---

[3] It is notable that the mention of "civil penalties" in § 31-51ii involves a reference to § 31-69 which, in turn, lists a series of civil penalties for which employers are liable to the Department of Labor who can collect the penalties through civil actions instituted by the Attorney General and use them for expenses accrued in enforcing provisions of Connecticut's wage and hour laws.  *See* § 31-69(c).  Thus, the interaction of these two provisions suggest that civil penalties are the domain of the Department of Labor and its attorney, the Attorney General, and not that of private attorneys.

must be assumed that Plaintiff is alleging a discrimination claim under Connecticut's parallel provision to Title VII. This assumption is further supported by the allegation that "[u]pon information and belief, the Defendants consistently paid Hispanic workers less than other non-Hispanic workers." Complaint, ¶ 112.

Where a plaintiff seeks to make out his *prima facie* case of discrimination based on ethnicity, race, national origin and citizenship status, as Plaintiff does here, and supports the theory by pointing to the disparate treatment of a purportedly similarly situated employee or employees, otherwise known as comparators, the plaintiff must show that he shared sufficiently similar employment characteristics with the comparators. *See Collins v. Federal Express Corp.*, 731 F. Supp. 3d 368, 380 (D. Conn. 2024) (*citing McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). A plaintiff may then prove discrimination by demonstrating that similarly situated employees who do not share the protected categories that he does, i.e., the comparators, were treated more favorably. *See id.* (*citing Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)). Notably, a plaintiff using comparators to prove discrimination does not have to show that he is similar in all respects to the comparator but in all "material respects." *See id.* at 381 (*quoting Doe v. City of N.Y.*, 473 F. App'x 24, 27 (2d Cir. 2012). In the end, a plaintiff must show that his comparator shared substantially the same job duties as he did and that is exactly what Plaintiff cannot do here.

At his deposition, the Plaintiff admitted that his job responsibilities were different than all of the co-workers that he alleged worked alongside of him. *See* Ex. A (Plaintiff Dep I) at 85-86. Plaintiff had to admit as much because their job responsibilities were, in fact, substantially different. Viktor Berisha was the owner of the business, took no wages from the restaurant and had a range of duties that spanned preparing food to overseeing the ordering of foodstuffs to

15

paying bills to closing the restaurant.  *See* Ex. C (Berisha Decl), ¶ 9.  Robert Berisha was the owner's son and cook.  *See id.*, ¶ 10.  Leonora Berisha was the owner's daughter who was primarily responsible for answering the telephones, taking orders and overseeing transactions at the point of sale.  *See id.*, ¶ 11.  Although Defendants deny that there was a dishwasher named Milton who worked at the restaurant during the relevant period, even if he did work there, his duty, according to the Plaintiff, was primarily washing dishes.  *See* Ex. A (Plaintiff Dep I) at 17.  Plaintiff was the only delivery driver for the restaurant during the relevant period and it is undisputed that doing deliveries was his primary duty.  *See id.* at 66.  Therefore, there are no comparators that Plaintiff can identify who had substantially similar job duties as he had and were compensated more favorably.  Given the fact that Plaintiff cannot identify any comparators for his discrimination claim, summary judgment must be granted in favor of the Defendants with respect to the Ninth Cause of Action.

> **F.      Defendants Should Be Granted Summary Judgment
> As to the Eleventh Cause of Action
> Because Plaintiff's Intentional Infliction of Emotional Distress Claim
> <u>Fails To State A Claim as a Matter of Law</u>**

In his Eleventh Cause of Action, Plaintiff alleges that Berisha "humiliated and castigated the Plaintiff with the intention to inflict emotional distress upon the Plaintiff."  Complaint, ¶ 120.  Notably, the Plaintiff does not identify in the Complaint any particular acts of humiliation and castigation that support this Cause of Action.

At his deposition, Plaintiff elaborated on the conduct of Berisha that he viewed as intended to cause him emotional distress.  First, Berisha allegedly paid him less compensation than he promised and also increased his duties without increasing his pay (*see* Ex. A (Plaintiff Dep I) at 94-96).  Second, Berisha allegedly threatened to lessen Plaintiff's pay if he continued to complain about his pay rate (*see id.* at 95).  Third, when Plaintiff had a car accident while

delivering food for the restaurant, Berisha allegedly did not go to the site of the accident and lend assistance (*see id.* at 97).  Fourth, Berisha allegedly once made Plaintiff pay for a whole box of masks when he sought to borrow one from the Restaurant because he forgot or lost one of his own (*see id.* at 96).  Fifth, Berisha allegedly threatened to fire him and have him deported a few times (*see* Ex. F (Raul Dep II) at 219-221).   Sixth, Berisha made the Plaintiff assist him in lifting a fifty-quart container of dough onto a rolling trolley in order to transport it from one side of the kitchen to the other when his son was not available or nearby (*see* Ex. F (Raul Dep II) at 221-22); *see also* Ex. C (Berisha Decl), ¶ 12.

In order to assert a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: 1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; 2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe.  *See Abrams v. Waters*, 2018 WL 691717 at *15 (D. Conn. Feb. 2, 2018).  To be held liable for intentional infliction of emotional distress, one's conduct must be "'so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind.'"  *Id.* (citing *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000).  Whether a defendant's conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court.  *See Miner*, 126 F. Supp. 2d at 194.

In *Miner*, the court noted that "adverse yet routine employment action[s], even if improperly motivated, do[] not constitute extreme and outrageous behavior when the employer

17

does not conduct that action in an egregious and oppressive manner." *Id.* at 195. Most of the "outrageous" conduct that Plaintiff identifies can be fairly characterized as "adverse yet routine employment action[s]." For example, Berisha paying less than he promised to the Plaintiff while also increasing Plaintiff's duties falls neatly into this category. Threatening to decrease Plaintiff's pay rate if he continued to complain about his compensation also falls into this category. Having Plaintiff assist him in lifting a 50-quart container of dough also fits into this category, especially in light of the undisputed fact that Berisha also demanded that his own son assist in this duty when he was available and nearby. *See* Ex. C (Berisha Decl), ¶ 12.

The court in *Miner* also clarified that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings" do not support a claim for intentional infliction of emotional distress. *See id.* at 195. Berisha's threats to fire the Plaintiff or have him deported, even if true, are clearly within this realm of "insults, verbal taunts, threats, indignities" that do not rise to intentional infliction of emotional distress. This is especially the case here where the Plaintiff claims that he allegedly endured threats that he was going to be fired and/or deported across the decade that he worked at the Restaurant and yet he never sought or was referred to a mental-health treatment provider during the entire period of his employment at the Restaurant. *See* Ex. A (Plaintiff Dep I) at 102-03. It stretches credulity too far to believe that Plaintiff experienced stress of a serious kind, as is required of intentional infliction of emotional distress, across an entire decade and yet he never sought nor was referred to therapy. Notably, with respect to Berisha's threat that he was going to deport him, the Plaintiff had no ready answer to the question at his deposition as to how, in fact, Berisha could have initiated any course of action that would have resulted in the Plaintiff's deportation. *See* Ex. F (Plaintiff Dep II) at 232. Thus, it is a fair inference from the Plaintiff's

18

response and his proven ability to seek counsel when he felt that he had been wronged as an employee that he did not take seriously Berisha's threats to deport him, assuming such threats occurred (which Defendants, of course, dispute).[4] In all material respects, Berisha's alleged comments to Plaintiff about firing him, deporting him and/or references to his immigration status appear to be on a par with the comments made to an older worker in *Duchnowski v. Webster Bank, N.A.* that were found not to be a sufficient basis for an intentional infliction of emotional distress claim. There, according to the court's recitation of the facts, the plaintiff was called by her co-workers and supervisor, "worthless," "unacceptable," and "old and dumb." *Scinto v. Shandex Corp.*, 2022 WL 1658179, at *23 (Sup. Ct. J.D. New Haven May 24, 2022) (J. Wilson). Such threats are rude, improper and intended to be "indignities" but they do not rise to the kind of actions that constitute intentional infliction of emotional distress.

Finally, a claim for intentional infliction of emotional distress cannot be predicated on a defendant's failure to act. *See Abrams*, 2018 WL 69171, at *16. Therefore, Plaintiff's allegation that Berisha failed to travel to the site of Plaintiff's accident while he was delivering pizza in order to lend assistance cannot be a basis for a claim of intentional infliction of emotional distress.

In light of the foregoing, the Court should grant summary judgment in favor of the Defendants with respect to the Eleventh Cause of Action.

---

[4] Before filing a claim with the Connecticut Department of Labor and the Commission on Human Rights and Opportunities ("CHRO") regarding his employment with Defendants, *see* Complaint, ¶¶ 43 & 70, Plaintiff filed a complaint with the CHRO when he was terminated from a previous employer on or around 2007. *See* Ex. A (Plaintiff Dep I) at 21-25; *see also* Plaintiff Charge of Discrimination filed with CHRO on August 23, 2022, a copy of which is attached as Exhibit M. Plaintiff has a proven history of standing up for himself as an employee and seeking legal assistance when necessary; therefore, as stated above, it strains credulity to think that Plaintiff would have endured the kind of harassment upon which a claim of intentional infliction of emotional distress is based without filing a complaint with an agency.

G.      There is no Evidence to Support An Equitable Tolling
        Of the Statute of Limitations

Ordinarily, the statute of limitations for a FLSA claim is two years from the date of filing,

unless there is a showing of willfulness on the part of the defendant-employer, in which case the

statute of limitations becomes three years from the date of filing. *See Andrade v. Kwon*, 2012

WL 3059616, at *3 (D. Conn. March 26, 2012) (*citing* 29 U.S.C. § 255(a)). The statute of

limitations for minimum wage and overtime claims pursuant to the Connecticut Minimum Wage

Act is two years for any violation, including a reckless or willful disregard for the law. *See id.* at

4 (citing C.G.S. § 52-596). Put another way, there is no extension of the statute of limitations for

a wage claim beyond two years pursuant to Connecticut law, even in those instances where an

employer is found to have violated the law willfully. Therefore, the statute of limitations for

Plaintiff's FLSA claims reach back no further than April 24, 2020, assuming that they are not

dismissed and the Plaintiff prevails at trial in showing that Defendants' failure to pay minimum

wage and overtime was "willful." The statute of limitations for Plaintiff's state wage claims

would be appear to reach back as far a April 24, 2021.

Plaintiff, through counsel, has indicated that he intends to seek equitable tolling of the

statute of limitations associated with his federal and state wage claims. Equitable tolling of the

statute of limitations in the wage and hour context is an "'extraordinary measure that applies

only when plaintiff is prevented from filing despite exercising that level of diligence which could

reasonably be expected in the circumstances.'" *Matysiak v. Sharmas*, 2015 WL 4939793, at *

(D. Conn. Aug. 17, 2015) (*quoting Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322

(2d Cir. 2004)); *see also Goodman v. Port Authority of New York and New Jersey*, 850 F. Supp.

2d 363, 381 ("However, equitable tolling should only be applied in 'rare and exceptional

circumstances in which a party is prevented in some extraordinary way from exercising his

20

rights'" (*quoting Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).

Under the doctrine of equitable tolling, should "rare and exceptional circumstances" apply, the

statute of limitations would not "begin to run until the plaintiff either acquires actual knowledge

of the facts that comprise his cause of action or should have acquired such knowledge through

the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice."

*Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985).

It is an uncontested fact that Plaintiff filed a complaint with the Connecticut Department

of Labor on or around April 8, 2022 in which he alleged wage claims against the Defendants.

*See* Ex. G (Email from Ivanoba Mota, CT Department of Labor investigator to Stephanie Stich,

Esq.); *see also* Exs. H & I.  Thus, Plaintiff filed his wage claim exactly one week after his

termination by the Defendants, which was on April 1, 2022.  A fair inference arising from

Plaintiff's speedy filing of a complaint after being terminated by the Defendants is that he knew

how to seek legal assistance with respect to his employment relationship with Defendants but

chose not to seek legal redress until the moment that he did.  Further, the document that he

submitted in support of his claim, *see* Ex. I, shows his awareness that he had a potential wage

claim against the Defendants from the very beginning of his employment but he chose not to

pursue it.  In light of the foregoing and the question that the *Goodman* court presents as central to

the inquiry as to whether equitable tolling of the statute of limitations is warranted – "'whether a

reasonable plaintiff in the circumstances would have been aware of the existence of a cause of

action, and despite all due diligence he was unable to obtain vital information bearing on the

existence of his claim'" – the answer to the question is a resounding no.  Therefore,

extraordinary circumstances that justify equitable tolling are not applicable here.  *Goodman*, 850 F. Supp. 2d at 381-82.[5]

In light of the foregoing, this Court should find that the furthest back that Plaintiff can reach alleged failures by the Defendants to pay him minimum wage and/or overtime compensation is April 24, 2020, which is three years before Plaintiff filed his wage claims in this Court, assuming he prevails at trial in showing that Defendants "willfully" violated FLSA law.

## IV.    CONCLUSION

For all these reasons the Court should grant Defendants' Motion for Summary Judgment with respect to all Causes of Action of the Complaint.

Respectfully Submitted,

Defendants Roblen, LLC and
Viktor Berisha

BY:    *Chad L. Edgar*
_____
Chad L. Edgar
Federal Bar No. ct30146
EDGAR LAW LLC
175 Montowese Street
Branford, CT 06405
Tel.: (203) 208-1017/ Fax: (203) 405-0843
Email: cedgar@edgarlaw.com

---

[5] We understand that district courts in this Circuit have differed as to whether a defendant-employer's failure to post notices of employee rights under federal and state wage law can be a basis, alone, for the tolling of the statute of limitations.  *Compare Darowski v. Wojewoda*, 2016 WL 4179840, at * (D. Conn. Aug. 9, 2016) ("A plaintiff **may** be entitled to equitable tolling of the limitations period where the defendant fails to post adequate notice of its workers' wage rights, and the plaintiff shows that he did not learn of these rights through other means") (emphasis added) with *Lopes v. Brazilian Travel Service, Ltd.*, 2017 WL 10311218, at *2 (D. Conn. Sept. 26, 2017) ("Courts have held that failure to post notices regarding the right to minimum wage and overtime pay alone is insufficient to justify equitable tolling") (*citing Pest v. Bridal Works of New York, Inc.*, 2017 WL 3393967 (E.D.N.Y. July 27, 2017).  Even if a court had the discretion to find Defendants' lack of minimum-wage and overtime posters in the Restaurant as a sufficient predicate for tolling the statute of limitations, it should not exercise that discretion here where the Plaintiff had the sophistication quickly to find a forum for legal redress of his alleged wage claims.  To the extent that at his deposition Plaintiff tried to justify his belated filing of a wage complaint by alleging that Defendants threatened to have him deported when he complained, the document that he submitted to the Department of Labor, Ex. I, settles the matter.  There is no mention of such a threat there, which, if it actually occurred, would have been foremost in his mind and would have occupied a prominent position in the statement.

22